# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JASON TIGER,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**COMMISSIONER of the Social** )<br>**Security Administration,** )<br>)<br>**Defendant.** ) | Case No. CIV-18-76-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Jason Tiger requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-five years old at the time of the most recent administrative hearing (Tr. 115, 758). He completed high school, and has worked as a janitor (Tr. 142, 750). The claimant alleges inability to work since an alleged onset date of September 1, 2006, due to a back injury, diabetes, chronic chest pain/discomfort, hypertension, left leg discomfort, fatigue, and shortness of breath (Tr. 141).

### Procedural History

On August 24, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. Following an administrative hearing, ALJ Trace Baldwin found that the claimant was not disabled in a written opinion dated December 12, 2011 (Tr. 11-22). The Appeals Council denied review, but this Court reversed in Case No. CIV-13-258-SPS and remanded the case with instructions to properly consider the claimant's obesity, as well as *all* other impairments, severe and nonsevere, in combination. On remand, ALJ James Bentley held a second administrative hearing and again determined that the claimant was not disabled, in a written opinion dated December 16, 2015 (Tr. 726-751). The Appeals Council again denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1581.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, that he could lift/carry up to twenty pounds occasionally and ten pounds frequently, sit for up to six hours, and stand/walk for up to six hours in an eight-hour workday. Additionally, he found the claimant could occasionally balance, stoop, kneel, crouch, and crawl, but never climb ladders/ropes/scaffolds, and that he could frequently, but not constantly, handle and finger bilaterally. He further found the claimant must avoid concentrated exposure to dust, fumes, odors, and poorly ventilated areas. Finally, he found that the claimant required a sit/stand option, defined as a temporary change in position form sitting to standing and vice versa, with no more than one change in position every twenty minutes and without leaving the workstation so as not to diminish pace or production (Tr. 731). The ALJ concluded that even though the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, small product assembler, inspector packer, and electric accessory assembler (Tr. 750-751).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly evaluate his RFC and his credibility, (ii) failing to follow this Court's remand instructions, and (iii) failing to account for his worsening condition. None of these contentions are ultimately persuasive, and the decision of the Commissioner should therefore be affirmed.

On remand, the ALJ found the claimant had the severe impairments of diabetes mellitus with neuropathy, obesity, COPD, hypertension, mild congestive heart failure, high cholesterol, lumbar degenerative disc disease, and severe sleep apnea, as well as the nonsevere impairment of chronic inactive gastritis (Tr. 729). The medical evidence in the record generally reflects that the claimant's weight ranged from 270 to 312, and he frequently weighed over 300 pounds (Tr., *e. g.*, 220, 431, 935, 1003). He largely received treatment at WeWoka Indian Health Center, and relevant records reflect the claimant was hospitalized December 14-19, 2010, for an acute exacerbation of his COPD (Tr. 448). He was admitted with shortness of breath and leg pain, and heart failure and deep vein thrombosis were ruled out (Tr. 451, 645-646, 649-650). On July 4, 2011, the claimant went to Holdenville General Hospital's ER with complaints of shortness of breath and was assessed with pulmonary edema and obstructive sleep apnea (Tr. 675). A frontal view of the chest was performed, and the impression was that, when correlated with his previous study, there was a mild prominence of the pulmonary interstitial markings, and the possibility of mild edema could not be excluded (Tr. 672). A sleep test revealed the presence of severe sleep apnea, so he was advised against sleeping supine, and recommended to use a CPAP machine (Tr. 683).

As to his diabetes, the medical evidence from 2007 through 2010 shows that it was at times controlled by medication and at times poorly controlled due to the claimant's lack of compliance with medication and diet, and notes reflect chronic edema (Tr. 306-429, 576-611, 613-651).

The claimant returned to WeWoka Indian Health Clinic on December 28, 2010, continuing to complain of left leg pain (Tr. 545). A scan of the left hip was negative, but the report stated it was very limited secondary to the claimant's body habitus as well as the technique and it could have easily obscured a fracture (Tr. 563). A lumbosacral spine view revealed mild degenerative disc disease at L5-S1, along with minimal spondylosis (Tr. 565). A November 2010 scan of the right knee revealed mild suprapatellar effusion and soft tissue swelling (Tr. 566).

On November 19, 2010, Dr. Adel Malati completed a comprehensive internal medicine exam, finding, *inter alia*, that he was positive for back pain, diabetes mellitus, hypertension, and hyperlipidemia (Tr. 430). He weighed 312 pounds, had a steady gait, and could sit, stand, and lie down without difficulty (Tr. 433). He had a full range of motion in the back, but complained of pain on flexion, and had full range of motion in the hips and left knee. His right knee was limited to flexion of 90 degrees (Tr. 433).

A 2012 MRI of the lumbar spine revealed mild to moderate left neuroforaminal stenosis as L5/S1, impinging on the exiting left L5 nerve root somewhat, as well as chronic degenerative discovertebral and posterior facet joint disease at levels L2-S1 (Tr. 974). This was interpreted by the radiologist as mild degenerative changes, no acute disease (Tr. 1160). The claimant then underwent nine sessions of physical therapy and reported doing better after the sessions (Tr. 976-982). In 2012, treatment notes indicate the claimant went to the Wewoka Indian Health Center for toenail trimming, that he dozed off during that time, and that the treatment provider noted periods of apnea when he dozed off (Tr. 1103). The claimant was ultimately prescribed a CPAP machine. The claimant also experienced

arterial insufficiency of the right foot, for which he underwent an operative procedure to correct on March 24, 2012 (Tr. 1185). He reported shortness of breath in 2012, and was referred for an echocardiogram, which revealed findings suggestive of mild volume overload but the quality was suboptimal given the claimant's body habitus (Tr. 1003, 1014, 1103, 1202). The claimant went in for follow-up treatment of his diabetes in 2013 and reported being noncompliant with his insulin (Tr. 1079).

More recent records reveal that the claimant went to the emergency room on January 12, 2014 with complaints of hip pain, for which he was given a shot (Tr. 961-962). In 2014, treatment notes also indicate the claimant reported a dry, scratchy cough but was not interested in quitting cigarettes (Tr. 1033). The claimant was hospitalized for four days with pneumonia in August 2015. He had complained of shortness of breath, dry cough, and chest pain prior to admission (Tr. 928-936).

In his extensive written opinion, the ALJ thoroughly discussed the claimant's hearing testimony, as well as all evidence in the record. As to the claimant's obesity, shortness of breath, and hypertension, the ALJ noted that the claimant's blood pressure was largely considered to be under control aside from two instances where it was slightly elevated (Tr. 740). He further noted that, despite exhibiting edema in 2010 and 2011, other treatment notes generally indicated there was no edema (Tr. 740). He noted the claimant's reports of shortness of breath, but that examinations were largely within normal limits even when he complained of shortness of breath, that the claimant had not stopped smoking, and that he reported shortness of breath when he had pneumonia and while he was still recovering from it, but was within normal limits thereafter (Tr. 741). As to his feet, the

ALJ noted that trimming his toenails regularly was part of his diabetic care, and that he had been provided with diabetic shoes (Tr. 739). The ALJ then noted this Court's Order remanding for consideration of the claimant's obesity, and the reports of shortness of breath and sleep apnea. However, he further noted and discussed the evidence, which as a whole indicated that the claimant was largely within normal limits and had full range of motion despite complaints of pain, as well as a normal gait, even when he weighed 312 pounds. He even noted that, although the claimant wears diabetic shoes, he had only exhibited sensory deficits once, and had an intact gait and coordination (Tr. 747-749). He then concluded the opinion by further discussing the RFC and how the impairments informed his RFC Assessment (Tr. 749).

First, the claimant asserts that the ALJ erred in assessing his RFC. As part of his first argument, he contends that the ALJ erred in failing to account for his obesity because he could not cut his own toenails and therefore could not stoop, balance, kneel, crouch, or crawl even occasionally, and that he could not be on his feet for the requirements of light work because he had been prescribed diabetic shoes. His second contention is that the ALJ further failed to account for his impairments in combination. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*,

2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).  But here, none of the claimant's arguments are based in the medical evidence.  Rather, the claimant simply asserts that obesity must cause these postural limitations, despite examinations that indicate a contrary conclusion (Tr. 430-437, 1091), and that it should be obvious that standing is not recommended for people who wear diabetic shoes.   However, the ALJ clearly considered the claimant's use of the diabetic shoes, and the claimant has pointed to no evidence in the record that a prescription for diabetic shoes *ipso facto* requires that he be limited to sedentary work.

Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process.  *See* 2002 WL 34686281, at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the respiratory system references obesity and explains that "[t]he combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately"; therefore, the ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 3.00 Respiratory System. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *6.  Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." *Id*.  The claimant asserts that the ALJ failed to properly consider the effect of his obesity and documented shortness of breath as

this Court directed, but here, the ALJ specifically noted the entire record with regard to the claimant's instances of shortness of breath and his weight, as well as all related medical findings. There was no additional evidence, and the ALJ was not required to speculate about whether the claimant's obesity exacerbated the claimant's other impairments. *See Fagan v. Astrue*, 231 Fed. Appx. 835, 837-838 (10th Cir. 2007) ("The ALJ discussed the evidence and why he found Ms. Fagan not disabled at step three, and, the claimant—upon whom the burden rests at step three—has failed to do more than suggest that the ALJ should have speculated about the impact her obesity may have on her other impairments.").

The claimant nevertheless asserts that the evidence does not support a finding that he can stand/walk for six hours total during an eight-hour workday, nor can he perform the occasional postural limitations. Contrary to claimant's arguments, however, the ALJ discussed *all* the evidence in the record and his reasons for reaching the RFC. *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). Despite claimant's arguments, the evidence does not reflect a limitation of time for how long the claimant can walk. Furthermore, he has pointed to no medical documentation as to postural limitations in the record. Because he points to no evidence other than his own assertion that he cannot walk six hours in an eight-hour workday or perform the occasional postural limitations, the undersigned Magistrate Judge declines to find an error here. *See Garcia v.*

*Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority.").

Finally, the claimant asserts that his condition has continued to worsen and that it has been compounded by stress, which means that the claimant is unable to perform the production rate jobs found by the ALJ at step five. But as discussed above, the Court finds that substantial evidence supports the ALJ's determination that the claimant can perform less than the full range of light work. The final contention is therefore without merit. In essence, the claimant asks the Court to reweigh the evidence in his favor, which the Court cannot do. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.") *citing Casias*, 933 F.3d at 800.

The undersigned Magistrate Judge finds that when all the evidence is taken into account, the conclusion that the claimant could perform light work with the aforementioned limitations is thus well supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d at 949. The undersigned Magistrate Judge finds no error in the ALJ's failure to include any additional limitations in the claimant's RFC. *See, e. g., Best-Willie v. Colvin*, 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of

Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of September, 2019.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**